UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COVINGTON 18 PARTNERS, LLC,

    *Plaintiff, Counter Defendant,*

v.

ATTU, LLC; LAKESIDE INDUSTRIES,
INC; UNITED STATES OF AMERICA;
DEPARTMENT OF ENERGY;
BONNEVILLE POWER
ADMINISTRATION; COVINGTON
LAND, LLC,

    *Defendants, Counter
    Claimants, Cross Claimants,
    Cross Defendants, Third
    Party Plaintiffs,*

v.

JOHN SINCLAIR; JANE DOE
SINCLAIR, FIDELITY NATIONAL
TITLE INSURANCE CO.,

    *Third Party Defendants.*

CASE NO. 2:19-cv-00253-BJR

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING DEFENDANT
ATTU'S MOTION TO STRIKE

## I.    INTRODUCTION

Plaintiff Covington 18 Partners, LLC ("Covington 18") filed this quiet title action on January 16, 2019, seeking a determination that four easements to a parcel of land transferred with the title. Currently before the Court is Plaintiff's motion for summary judgment, Dkt. No. 15, and

1

Defendant Attu, LLC's ("Attu") motion to strike the motion for summary judgment, Dkt. No. 27. Having reviewed the motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will deny Attu's motion to strike and grant Plaintiff's motion for summary judgment.

## II.    BACKGROUND

The crux of this dispute concerns four access and utility easements which Plaintiff claims transferred with ownership after the sale of a parcel of land in Covington, Washington. The events leading to this dispute are described below.

### A. The Property

In 1998 and 2001, Attu purchased two adjacent parcels of land in Covington, Washington from James Development, Inc. and William and Shirley Stewart. Dkt. No. 1-1 at 3. The property purchased from James Development was a large square-shaped parcel and the property purchased from the Stewarts was a narrow strip of land to the west of the parcel purchased from James Development. Dkt. No. 16-8 at 4. In 2009, Attu conducted a boundary line adjustment, which subdivided the plot into Parcels A and B. *Id.* Parcels A and B are adjoining, with Parcel A as a square plot in the northeast corner, and Parcel B in an "L" shape bordering it. *Id.*

Defendant Bonneville Power Administration ("BPA"), a United States agency, owns the land east of Parcels A and B. Dkt. No. 15 at 2–3. Defendant Lakeside Industries, Inc. ("Lakeside") owns the land north of Parcels A and B. *Id.* BPA's land abuts a public roadway, but Parcels A and B do not, making the properties landlocked. *Id.* A map of the relevant plots, provided by Plaintiff, is included as Exhibit A.

## B. Creation of Easements

· To give Attu's property access to the roadway, its neighbors conveyed four easements between 2008 and 2009. Dkt. No. 15 at 4. First, in 2008, prior to the division of Parcels A and B, BPA granted Attu an easement for ingress, egress, and utility rights over BPA's land to Covington Way SE, the nearest public road (the "October 2008 Easement"). Dkt. No. 16-6. The deed for the October 2008 Easement states that it "benefits the real property legally described on attached Exhibits A and B," and Exhibit B describes, in metes and bounds, the entirety of Attu's property as it existed in 2008, *i.e.*, both Parcels A and B. Dkt. Nos. 16-2, 16-3, 16-6 at 4. The deed contains a provision stating, "[t]his easement and the covenants herein shall be covenants running with the land and shall be binding upon and inure to the benefit of the successors, heirs, and assigns of both parties hereto." Dkt. No. 16-6 at 5.

Shortly thereafter, Attu and Lakeside recorded an easement for ingress, egress, and utilities access over their shared border (the "Reciprocal Easement"). Dkt. No. 16-7. The deed for the Reciprocal Easement states that Lakeside grants a "nonexclusive, perpetual easement to Attu to run with and benefit the Attu property" and then describes, in metes and bounds, the entirety of Attu's property as it existed in 2008. Dkt. Nos. 16-2, 16-3, 16-7 at 3, 13. The deed contains a provision stating, "[t]he rights and obligations of the parties shall inure to the benefit of and be binding upon their respective successors and assigns." Dkt. No. 16-7 at 9.

In 2009, following the subdivision of the land into Parcels A and B, BPA granted Attu an easement for access and utilities along the entire eastern boundary of Attu's property (the "168th Extension Easement"). Dkt. No. 16-9. The deed describes the easement in metes and bounds as touching both Parcels A and B. Dkt. Nos. 16-2, 16-3, 16-9 at 6. The deed provides that it is granted to Attu "and its assigns." Dkt. No. 16-9 at 3.

3

Similarly, BPA granted Attu an easement for utilities from the southeast corner of the 168th Easement to the road (the "Utilities Easement"). Dkt. No. 16-10. The deed describes the easement in metes and bounds as touching the portion of the 168th Extension Easement that is adjacent to Parcel B. Dkt. Nos. 16-2, 16-3, 16-10 at 6. The deed provides that it is granted to Attu "and their assigns." Dkt. No. 16-10 at 3.

## C. Covington 18's Purchase of Parcel B

In 2012, Plaintiff purchased Parcel B from Attu, using a standard form Purchase and Sale Agreement ("PSA"). Dkt. No. 15 at 5. Attu alleges that it engaged in significant negotiations with Plaintiff regarding the purchase of Parcel B, and the easements specifically. Dkt. No. 25 at 4–6. Attu alleges that the parties initially discussed Plaintiff purchasing both parcels, but the cost was too high for Plaintiff, so the parties entered an option agreement giving Plaintiff the right to purchase Parcel A in the next five years, so that Plaintiff could eventually develop both parcels. *Id.* The four easements were not addressed in the PSA, option agreement, or deed for Parcel B. Dkt. No. 15 at 5.

An early version of the PSA, drafted while still in negotiations, included a "page six," which contained a provision addressing transferal of personal property. Dkt. Nos. 15 at 19, 25 at 5–6. Specifically, it provided that "[t]his sale includes all right, title and interest of Seller to the following tangible personal property: [None]." Dkt. No. 26-8 at 7. During the course of negotiations for Parcel B, the parties decided to exclude page six from the final PSA. Dkt. Nos. 15 at 19, 25 at 5–6. The parties agreed, however, to include the same page six of the standard agreement in the option agreement. Dkt. No. 25 at 6. Attu alleges that the reason for the exclusion of page six from the PSA and its inclusion in the option agreement was that as part of the

4

negotiations the parties agreed to transfer all the easements and rights of way only when Plaintiff exercised the option to purchase Parcel A. *Id.* at 6–7.

### D. The Current Dispute

In the years following the purchase of the Parcel B, Plaintiff used all four easements for access and utilities. Dkt. No. 15 at 5. In 2015, however, Attu claimed that it had not conveyed the easements to Plaintiff and that Plaintiff did not have an interest in them until it chose to exercise the option agreement. *Id.* Around this time, Plaintiff entered into negotiations for the sale of Parcel B to a third party, but the third party terminated negotiations, in part, according to Plaintiff, because of the dispute over the easements. Dkt. No. 1-1 at 6.

In 2017, Attu sold Parcel A to Covington Land LLC ("Covington Land").[1] Dkt. No. 15 at 6–7. In the agreement for the sale, Attu stated that the four easements remained in Attu's interest and that Attu retained the right to grant Parcel A's easement rights to the owner of Parcel B. *Id.* After the sale of Parcel A, Attu attempted to block Plaintiff's use of the easements by placing a truck, trailer, and ecology blocks on the easements. Dkt. No. 1-1 at 7–8. Attu also sought to have Covington Land block Plaintiff's access to the easements, but Covington Land did not comply with Attu's requests. Dkt. No. 15 at 8.

### E. Procedural History

In 2016, Plaintiff filed a declaratory judgment suit in King County Superior Court, seeking judgment that all four of the easements transferred with the sale of Parcel B. Dkt. No. 15 at 6. While a decision was pending, Plaintiff voluntarily dismissed the suit without prejudice due to the death of the principal and managing member of the company, Laurent Girard. *Id.* Attu did not file

---

[1] There is no documented relationship between Plaintiff Covington 18 Partners, LLC and Defendant Covington Land LLC.

an objection to the dismissal. *Id.* Discovery had taken place before dismissal, including a deposition of Girard. *Id.*

Two years later, on January 16, 2019, Plaintiff filed this quiet title action in King County Superior Court. Dkt. No. 1-1. On February 21, 2019, Defendant United States, on behalf of itself, the Department of Energy, and BPA, removed to this Court under 28 U.S.C. § 1442(a)(1).[2] Dkt. No. 1. Plaintiff filed a motion for summary judgment on April 4, 2019. Dkt. No. 15. Attu subsequently filed a motion to strike the motion for summary judgment on April 25, 2019. Dkt. No. 27.

In response to the quiet title action, several parties have filed additional claims. Attu filed a counterclaim against Plaintiff for tortious interference with a contractual relationship and a crossclaim against Covington Land for tortious interference with a business expectancy. Dkt. No. 11. Attu also filed a third-party complaint against Fidelity National Title Insurance Company for unfair or deceptive acts or practices in its role as an escrow and closing agent for the Parcel B sale. Dkt. No. 41. Covington Land filed a counterclaim against Plaintiff for quiet title to the easements and an injunction for trespass if the Court concludes that the easements do not belong to Plaintiff. Dkt. No. 20. Covington Land also filed a crossclaim against Attu for contractual indemnity and a third-party complaint against John Sinclair, the managing member of Attu, and Jane Doe Sinclair, his wife, for contractual indemnity. *Id.* Attu also filed a motion for leave to file a third-party complaint, but proceeded to file the complaint without leave, per the Court's standing order. Dkt. Nos. 31, 40.

---

[2] The Court applies Washington state law in this case because 28 U.S.C. § 1442(a) "provide[s] a federal forum" for federal agencies to defend their claims "without changing the [relevant] substantive law." *Guidry v. Durkin*, 834 F.2d 1465, 1468 (9th Cir. 1987). As the U.S. Supreme Court has held, the statute is a "purely derivative form of jurisdiction," and does not change the rights of either party. *Arizona v. Maypenny*, 451 U.S. 232, 243 (1981).

### III.   MOTION TO STRIKE

The Court will first address Attu's motion to strike the motion for summary judgment, Dkt. No. 27, as it will determine the Court's disposition of the motion for summary judgment.

#### A. Legal Standard

Attu filed a motion to strike the motion for summary judgment, but does not cite a Federal Rule of Civil Procedure as a basis for its motion. Dkt. No. 27 at 2-3. Rule 12(f) provides that the Court may strike from the record "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" in a pleading. FED. R. CIV. P. 12(f). In its motion, however, Attu seeks something more akin to a delay than a strike, stating that "Plaintiff brought its motion before Attu has had time to conduct discovery on its affirmative defenses of laches and equitable estoppel, and before any party has conducted any discovery." Dkt. No. 27 at 2.

Delaying summary judgment is more appropriately asserted under Rule 56(d), which allows the Court to defer or deny judgment if the nonmovant shows it "cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(d). Under Rule 56(d), the party requesting a delay in summary judgment must "show that (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 678 (9th Cir. 2018) (quoting *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008)). The party does not have to name precisely what discovery will reveal, but must be seeking evidence that is more than speculative. *Id.*

#### B. Discussion

Attu argues that the Court should grant its motion to strike because it has not had sufficient time to conduct discovery on its affirmative defenses of laches and equitable estoppel, and that it

would therefore be unfair to grant summary judgment at this point. Dkt. No. 27 at 2–3. In "Declaration of Patrick J. Schneider," Attu's counsel asserts,

> This case was removed to this District Court by the Bonneville Power Administration before most of the parties, including Attu, had answered Plaintiff's Complaint. Defendant Covington Land, LLC only filed its answer yesterday [April 24th], the day before Attu's response is due to Plaintiff's motion for summary judgment. Covington Land included a third-party action against ATTU and its principals, and I will not have time to read this pleading, let alone evaluate it, until after I respond to Plaintiff's motion for summary judgment. The parties have not yet filed a joint status report, which is due on May 20, 2019, and no discovery has been conducted by any party.

Dkt. No. 28 at 2.

Plaintiff responds that Attu has not provided enough detail to warrant delaying summary judgment. Dkt. No. 29 at 10. Given counsel's assertions, the Court will assess the motion as if it were brought under Rule 56(d). FED. R. CIV. P. 56(d).

A party can bring a motion for summary judgment any time until thirty days after close of discovery. FED. R. CIV. P. 56(b). Thus, while parties may not have conducted discovery yet, the timing is proper for Plaintiff's motion for summary judgment. *See id.*

In its motion and supporting declaration, Attu does not name specific facts it seeks to elicit from a delay of summary judgment and only speculates that "there likely is additional evidence that supports its affirmative defenses." Dkt. No. 39 at 7. While many briefs and additional claims have been filed in this case, Attu has not satisfied the standard to delay summary judgment. It has not set forth in its motion the specific facts it seeks to elicit, has not shown that the facts sought exist, and has not shown how any new facts are essential to opposing summary judgment. *See Stevens*, 899 F.3d at 678. Thus, Attu has not raised the prospect of this information above the speculative level. *Id.*

Moreover, the issues in this motion for summary judgment turn on legal conclusions. *See* FED. R. CIV. P. 56(a). No fact as yet undiscovered could vindicate Attu's affirmative defenses because they fail as a matter of law. As the Court reasons below: (1) the statute of limitations defense is unavailing because this is not a contract claim, it is an action for quiet title for which there is no statute of limitations, *see infra* at 16; (2) laches is unavailing because the action was not unreasonably delayed and Attu has not sufficiently alleged damages as a result of a delay, *see infra* at 19–20; and (3) equitable estoppel is unavailing because Attu's reliance was not reasonable, *see infra* at 20–21. As such, because Attu has not met the standard to delay summary judgment, the Court will DENY the motion to strike.

## IV.    MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard

The Court will grant summary judgment if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of fact is considered genuine where "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Reynaga v. Roseburg Forest Prods.*, 847 F.3d 678, 685 (9th Cir. 2017). The Court, however, will not find a genuine issue of fact "where the only evidence presented is uncorroborated and self-serving testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

To establish the existence or nonexistence of a genuine issue of fact, the parties must cite to materials in the record. FED. R. CIV. P. 56(a). The court must view the evidence "in the light most favorable to the nonmoving party and dra[w] all justifiable inferences in its favor." *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011). To defeat summary judgment, the

9

nonmoving party must come forward with more than a "scintilla of evidence." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)). The Court may only consider admissible evidence in its determination. *Id.*

**B. Discussion**

The Court will first address the Plaintiff's affirmative case, followed by the merits of Attu's defenses. It is clear to the Court that from the start, Attu has misunderstood the nature of the easements and the effect of documents creating and transferring the easements.

**1. The affirmative case**

*a. The original deeds created appurtenant easements*

An easement is "a right, distinct from ownership, to use in some way the land of another." *City of Olympia v. Palzer*, 728 P.2d 135, 137 (Wash. 1986). An easement is either appurtenant or *in gross*. *Olson v. Trippel*, 893 P.2d 634, 639 (Wash. Ct. App. 1995). The distinction between the two is that an appurtenant easement "benefits a particular piece of property" while an *in gross* easement "directly benefits one person." *M.K.K.I., Inc. v. Krueger*, 145 P.3d 411, 416 (Wash. Ct. App. 2006). Appurtenant easements involve two plots, a dominant tenement and a servient tenement. *Roggow v. Haggerty*, 621 P.2d 195, 197 (Wash. Ct. App. 1980). The dominant tenement "benefits from the easement," and the servient tenement "is burdened by the easement." *M.K.K.I., Inc.*, 145 P.3d at 416.

Washington has a "very strong presumption" that easements are appurtenant. *Pioneer Sand & Gravel Co. v. Seattle Const. & Dry Dock Co.*, 173 P. 508, 511 (Wash. 1918) ("[i]t is well settled in law that easements *in gross* are not favored"); *see also Green v. Lupo*, 647 P.2d 51, 54 (Wash. Ct. App. 1982) ("[a]n easement is not *in gross* when there is anything in the [instrument] which indicates that it was intended to be appurtenant"). Designating an easement for ingress, egress, or

utilities access indicates that the easement is appurtenant. *Winsten v. Prichard*, 597 P.2d 415, 430–31 (Wash. Ct. App. 1979) ("[i]ngress, egress and utilities are purposes which are normally associated with land use rather than personal convenience").

An appurtenant easement passes with the parcel upon sale or transfer; an *in gross* easement remains reserved to the individual upon sale or transfer of the parcel. *Kirk v. Tomulty*, 831 P.2d 792, 796 (Wash. Ct. App. 1992) (unlike an *in gross* easement, an appurtenant easement "passes to successors-in-interest by the conveyance of the property"). Thus, the crux of this dispute is determining whether the easements are appurtenant or in gross, as determining that an easement is appurtenant means it automatically transfers with the land.

Plaintiff argues that the four easements are appurtenant and therefore run with the land because they have every indication of appurtenance and nothing in their conveyance indicated they were intended as a personal right. Dkt. No. 15 at 10. Attu argues that the easements remained in its personal interest during the various transfers. *See e.g.*, Dkt. No. 25 at 12–13 ("Parcel B has never had appurtenant easements" . . . "and Attu would have had to expressly create and convey the easements to Parcel B"); Dkt. No. 11 at 9 ("[t]he Reciprocal Access Agreement cannot be appurtenant to Parcel B").

The Court concludes that the four easements are appurtenant, first, because they are used for ingress, egress, and utilities. *See Winsten*, 597 P.2d at 430–31 (ingress, egress, and utilities are "normally associated with land use"). Next, the deeds granting the October 2008 Easement and Reciprocal Easement to Attu both specify that the easements run with the land, bind assignees, and are for ingress, egress, and utilities access. Dkt. Nos. 16-6, 16-7. The deeds granting the 168th Extension Easement and Utilities Easement to Attu both specify that they bind assignees and are for access and utilities. Dkt. Nos. 16-9, 16-10. Thus, all four easements display all the telltale signs

11

of appurtenance and the documents establishing their creation provide no evidence to refute this conclusion. Therefore, the Court concludes that the easements are appurtenant. *See Pioneer Sand & Gravel Co.*, 173 P. at 511.

Furthermore, Attu is incorrect that Parcel B did not have appurtenant easements. Given Washington's strong presumption of appurtenance, any document granting Attu an easement *in gross* would have had to explicitly designate that it was conveyed to an individual. Because the documents originally granting the easements did not do so, the easements became part of the land from the moment they were granted, contrary to Attu's contentions. Therefore, in its current arguments, Attu has failed to realize that the easements did not belong to it, but rather were a part of the land it eventually conveyed to Plaintiff.

> b. *The easements passed to Parcel B upon subdivision*

Plaintiff next argues that the easements benefit Parcel B because nothing in either the documents creating the easements nor subdividing Attu's parcel of land limited their benefit to Parcel A. Dkt. No. 15 at 18. Attu, on the other hand, argues that the easements only belonged to Parcel A, and not Parcel B. Dkt. No. 25 at 12–13 (for example, arguing that the "Reciprocal Easement excluded Parcel B from its legal descriptions"). Attu, however, fails to respond to the arguments about the effects of subdividing the dominant tenement, stating that there is "no need for Attu to respond to the many cases cited" by Plaintiff because they are "irrelevant." Dkt. No. 25 at 13. But Attu is wrong, as the cases make clear. *See, e.g., Clippinger v. Birge*, 547 P.2d 871, 878–79 (Wash. App. Ct. 1976); *Green*, 647 P.2d at 54.

The 168th Extension Easement and Utilities Easement, which were created after subdivision, are easiest to determine, as their creation documents explicitly state that they touch the boundaries of Parcel B. *See* Dkt. Nos. 16-2, 16-3, 16-9, 16-10. Therefore, Attu is factually

incorrect as to whether these easements benefited Parcel B. They did and thus Parcel B had access to those easements from the time of their creation.

The October 2008 Easement and Reciprocal Easement, on the other hand, benefit Parcel B as a matter of law. An appurtenant easement benefits a dominant tenement. *Roggow*, 621 P.2d at 197. The October 2008 Easement and Reciprocal Easement were granted before Attu divided its land into Parcels A and B. Unless limited by the dividing instrument, when a dominant tenement is subdivided, the benefits of the appurtenant easement flow to both subdivisions. *Clippinger*, 547 P.2d at 878–79 ("even when the dominant estate is subdivided into parcels" an appurtenant easement will "follow possession of the dominant estate"); *Green*, 647 P.2d at 54 (appurtenant easements follow possession of the dominant estate "even when the dominant estate is subdivided").

Here, the instruments originally conveying the October 2008 and Reciprocal Easements to Attu each described the easement as benefitting the entirety of what would become Parcels A and B. Dkt. Nos. 16-2, 16-3, 16-6, 16-7. Importantly, the document conducting the boundary line adjustment which created Parcel B did nothing to modify access to the easements. *See* Dkt. No. 16-8 at 4. Therefore, the benefits of the October 2008 and Reciprocal Easements flowed to both Parcels A and B as a matter of law upon subdivision. *See* Dkt. No. 16-8 at 4; *see also Clippinger*, 547 P.2d at 878–79.

Therefore, Attu is incorrect in this aspect of its argument because it fails to appreciate that the instruments originally granting the October 2008 Easement and Reciprocal Easement benefitted the property as a whole and upon subdivision, flowed to the subdivided parcels—that is, both A and B. In order to have limited their benefit to just Parcel A, Attu would have had to put

13

such a limitation in the subdivision documents. It did not. Based on this lack of limitation, the benefit of these easements flowed to both Parcels A and B when they were subdivided.

There is no evidence in the documents creating those easements that they were intended to exclusively benefit the piece of land that would become Parcel A. Accordingly, the subdivision caused the benefits of the easements to flow to both parcels. Attu needed to explicitly limit easement access in the subdivision document to have the effect it wants, but the terms of the document did not limit access. *See* Dkt. No. 16-8.

### c. *The easements transferred with Parcel B when it was sold to Plaintiff*

Having established that Parcel B benefited from all four easements, Plaintiff next argues that they transferred with the purchase of Parcel B. Dkt. No. 15 at 14. Attu contends that the easements did not transfer with the sale of Parcel B because the parties did not include page six of the draft PSA in the final PSA. Dkt. No. 25 at 5. In its brief, Attu contends that, "[i]n order to reach agreement with Mr. Sinclair, Mr. Girard agreed to delete all of page 6 of the [standard] Form PSA which contained . . . paragraph 14 which would have provided for the transfer of the easements." *Id*. Page six, paragraph fourteen of the draft PSA is titled "Personal Property" and addresses transfer of personal property associated with the parcel.[3] Dkt. No. 26-3 at 7. Attu argues that this demonstrates that the parties intended to exclude the easements from the sale. Dkt. No. 25 at 5.

---

[3] Providing that, "a. This sale includes all right, title and interest of Seller to the following tangible personal property: [None]... b. In addition to the leases and Vendor Contracts assumed by Buyer pursuant to Section 5(a) above, this sale includes all right, title and interest of Seller to the following intangible property now or hereafter existing with respect to the Property including without limitation: all rights-of-way, rights of ingress or egress or other interests in, on, or to any land, highway, street, road, avenue, open or proposed, in, on, or across, in front of, abutting or adjoining the Property; all rights to utilities serving the Property; all drawings, plans, specifications and other architectural or engineering work product; all governmental permits, certificates, licenses, authorizations and approvals; all rights, claims, causes of action, and warranties under contracts with contractors, engineers, architects, consultants, and other parties associated with the Property; all utility, security and other deposits and reserve accounts made as security for the fulfillment of any of Seller's obligations; any name of or telephone numbers for the Property and related trademarks, service marks or trade dress; and guarantees, warranties or other assurances of performance received." Dkt. No. 26-3 at 7.

14

Attu continues that because it retained the rights to the easements when it sold Parcel B, Plaintiff would only have gained an interest in the easements if it exercised the option to purchase Parcel A. Dkt. No. 25 at 12-13 (arguing that "[t]he deed at issue does not convey the easements at issue" and "no additional easements would be conveyed unless the Option was exercised").

An appurtenant easement is "part of the realty it benefits." *Olson*, 893 P.2d at 638-39. Because an appurtenant easement benefits the dominant tenement and not the individual, the easement will "follow possession of the dominant estate through successive transfers." *Green*, 647 P.2d at 54; *see also Cowan v. Gladder*, 206 P. 923, 924 (Wash. 1922) (holding that appurtenant easement passed with conveyance). This is the case even where the easement is "not mentioned in the deed." *810 Properties v. Jump*, 170 P.3d 1209, 1215 (Wash. Ct. App. 2007); *see Olson*, 893 P.2d at 637 (appurtenant easement passed in multiple conveyances where instruments were silent as to easements). While appurtenant easements generally transfer to successors as a matter of law, the transfer can be limited if done so expressly. *Clippinger*, 547 P.2d at 878 ("[t]here is nothing to prevent a transferor" from requiring that the easement "shall not pass to the transferee").

Here, when Plaintiff bought Parcel B, the benefit from the easements transferred to Plaintiff as an assignee of Attu. *See Green* at 54. Because they are appurtenant, *see supra* at 11–12, the easements did not need to be mentioned in the sale documents to be conveyed to a successor; the easements transferred to Plaintiff despite not being addressed in the PSA or deed. *See 810 Properties*, 170 P.3d at 1215. The omission of page six and its language about personal property transfers did not limit the terms of the easement transfer. Without specific language excluding the transfer of the easements, the parties essentially ensured the easements would be transferred through the normal course.

15

For these reasons, Attu is incorrect that excluding page six from the PSA prevented the easements from transferring. First, appurtenant easements are not personal property—they are part of the land—so including or excluding a provision addressing personal property has no effect on the status of the easements. Attu failed to recognize that because appurtenant easements transfer with the land as a matter of law, in order to modify the easement, the sale documents would have had to do so explicitly. They did not, and therefore the easements passed with the sale of the parcel.

Based on the foregoing, the Court concludes that the benefit of all four easements passed to Plaintiff when it purchased Parcel B from Attu. The documents creating the easements either explicitly stated that they benefited Parcel B or the benefit flowed to it upon subdivision. From there, the easements passed to Plaintiff as part of the real estate it purchased; nothing in the sale document dictated otherwise.

### 2. Attu's defenses are unavailing

#### a. The action is not barred by the statute of limitations

Attu argues that because this action was filed beyond the six-year statute of limitations for contract actions, it must be dismissed. Dkt. No. 11 at 11 (citing Wash. Rev. Code Ann. § 4.16.040). Attu asserts that the statute is applicable because this suit involves contract interpretation, namely of the PSA. Dkt. No. 11 at 11. Plaintiff replies that it filed a quiet title action and not a breach of contract action, and quiet title actions do not have a statute of limitations. Dkt. No. 15 at 20. Plaintiff is correct.

The Prayer for Relief in Plaintiff's complaint seeks "[q]uiet title judgment in its favor." Dkt. No. 1-1 at 11. The six-year statute of limitations does not apply to quiet title actions. *Petersen v. Schafer*, 709 P.2d 813, 815 (Wash. Ct. App. 1985) (stating "[a]ctions to quiet title are not subject to the statute of limitations"). Thus, Attu's statute of limitations defense is unavailing.

16

*b. The statute of frauds is not relevant to the easement transfer*

Next, Attu argues that the statute of frauds required that the transfer of the easements be in writing to be effective, and Attu needed to expressly convey the easements to Plaintiff in writing in order for them to transfer. Dkt. No. 25 at 13.

The statute of frauds instructs that "[e]very conveyance of real estate, or any interest therein, and every contract creating or evidencing an encumbrance upon real estate, shall be by deed." Wash. Rev. Code Ann. § 64.04.010. Washington law, however, provides that appurtenant easements transfer with the land they benefit even if the easement is not mentioned in the transfer instrument. *M.K.K.I., Inc.,* 145 P.3d at 416 (appurtenant easement "passes to the successor in interest" even if it is "not mentioned in the instrument of transfer"). Therefore, the easements transferred with the title to Parcel B despite not being mentioned in the PSA or deed. *See M.K.K.I., Inc.,* 145 P.3d at 416.

*c. The alleged negotiations did not limit Parcel B's easement rights*

Attu contends that the parties agreed that Plaintiff would only gain legal rights to the easements if it exercised its option to purchase Parcel A. Dkt. No. 25 at 5. According to Attu, the Court must give effect to the parties' intent during negotiations when construing a deed and therefore should read the deed to exclude the easements from the transfer. Dkt. No. 25 at 12.

Attu's argument rests on the assumption that Parcel B never had easement rights. The logic underlying Attu's argument is that (1) Parcel B did not have easements when Attu originally bought it, (2) when the easements were created, their terms excluded Parcel B, instead vesting the easement rights with Attu as personal property, (3) for Plaintiff to have obtained the rights, Attu needed to affirmatively convey them, and (4) Plaintiff and Attu agreed that Plaintiff would only get Parcel A's easement rights if it exercised the option. Dkt. No. 25 at 12–13.

17

Attu's logic fails at step two, however, because, as established earlier, the easements either (1) benefitted all of the land that would become Parcels A and B and flowed to Parcel B on subdivision or (2) expressly benefitted Parcel B by their creation terms, and thus passed to Plaintiff upon sale as a part of the property as a matter of law. *See supra* at 12–13; *see also Clippinger*, 547 P.2d at 878–79 (appurtenant easements "follow possession of the dominant estate through successive transfers" even where "the dominant estate is subdivided into parcels"). Therefore, the Court need not, and in fact should not, attempt to divine the intent of the parties as they negotiated.

### d. *Unilateral statements cannot modify the status of the easements*

Next, Attu argues that the Plaintiff's former attorney conceded that it had no interest in the easements. Dkt. No. 25 at 8. In 2015, representatives from BPA, Attu, and Plaintiff corresponded as to the status of Parcel A's easement rights. Attu alleges that in the course of those dealings, Dylan LeValley, Plaintiff's counsel at the time, stated that, "[t]oday [Plaintiff's] attorney conceded that easement appurtenance does not apply to the easements between BPA and Attu." Dkt. No. 25 at 8. Plaintiff contends that its attorneys never took this position. Dkt. No. 15 at 23. Even considering the allegations in the light most favorable to Attu, this does not create an issue of material fact.

Termination of easements is "disfavored under the law." *Hanna v. Margitan*, 373 P.3d 300, 306 (Wash. Ct. App. 2016) (quoting *City of Edmonds v. Williams*, 774 P.2d 1241, 1243 (Wash. Ct. App. 1989)). The ways an easement holder can extinguish the easement include: "release[ing] it in an instrument" compliant with the statute of frauds, abandonment, adverse possession, or where "the dominant and servient estates merge." *Id.*

Here, the Court has already concluded that the easements were appurtenant, and that Plaintiff obtained an interest in the easements when it purchased Parcel B in 2012. *See supra* at

11–13. Therefore, to terminate its easement interest, Plaintiff's conduct would have had to fall into one of the categories mentioned above. *See Hanna*, 373 P.3d at 306. Because the alleged conduct of Mr. LeValley does not fit one of those categories and because extinguishing easements is disfavored, the Court concludes that Plaintiff did not terminate its interest through the alleged statement by counsel.

### e. The defense of laches is not availing

Attu raises laches as an affirmative defense, alleging that it was harmed by Plaintiff's delay in bringing the current action after initiating and dismissing its earlier declaratory judgment suit. Dkt. No. 11 at 11. Plaintiff contests whether the defense of laches is appropriate because laches is a defense applicable only after the statute of limitations has run. Dkt. No. 29 at 8–9.[4]

Laches is an equitable defense that requires the asserting party to show that: (1) Plaintiff had "knowledge of the facts constituting a cause of action" or an opportunity to "discover such facts," (2) commencing the action was "unreasonable delay[ed]," and (3) Defendant was damaged by the delay. *Hunter v. Hunter*, 758 P.2d 1019, 1023 (Wash. Ct. App. 1988). To invoke laches, there must be "a delay in the assertion of a claim" and "some change of condition" making it inequitable to enforce the claim. *Newport Yacht Basin Ass'n of Condominium Owners v. Supreme Northwest, Inc.*, 277 P.3d 18, 30 (Wash. Ct. App. 2012). Laches must be proved by "clear and convincing evidence" where property rights are at stake. *Id.* at 31 (quoting *Arnold v. Melani*, 449 P.2d 800, 803 (Wash. 1968)). In this case, Attu has not shown that there was an unreasonable delay or that it suffered the requisite damage from a delay.

---

[4] The Court finds, however, that it need not address the question of whether laches would ever apply where no statute of limitations applies, for example in an action for quite title, because it finds that Attu has failed to establish both the unreasonable delay and damages prongs of laches.

Plaintiff filed a declaratory judgment action in 2016 to determine the status of the easements. Dkt. 16-15. Only two years passed between Plaintiff's unopposed voluntary dismissal of the declaratory judgment suit and the filing of this quiet title suit. Dkt. No. 15 at 1, 6. The earlier suit was dismissed without prejudice. *Id.* at 1. Attu has not shown that the two-year period in between lawsuits was an unreasonable delay, especially because quiet title actions may be brought at any time and Plaintiff had a good reason for dismissing the previous suit, *i.e.,* the death of the principal and managing member of Covington 18. *See Petersen,* 709 P.2d at 815 (no statute of limitations for quiet title actions); *compare Davidson v. State,* 802 P.2d 1374, 1382 (Wash. 1991) (holding laches was appropriate where 62-year delay led to loss of evidence for defense), *with Gardner v. Herbert,* 5 P.2d 782, 784 (holding laches was inappropriate after 15-month delay).

Attu, in addition, alleges that by delaying bringing this action, Plaintiff caused "prejudice and damage" to Attu. Dkt. No. 11 at 11. Despite this general conclusory statement of prejudice and damage, Attu has not provided clear, convincing evidence that it has suffered damage as a result of the delay and therefore laches is inappropriate.

### f. The defense of equitable estoppel is not availing

Attu proffers the defense of equitable estoppel. According to Attu, Plaintiff agreed to structure the deal for the purchase of Parcel B so that the easements would not transfer until the option to purchase Parcel A was exercised and Attu acted in reliance on Plaintiff's promise by holding the option to purchase Parcel A open for five years. According to Attu, Plaintiff reneged on the agreement and is unfairly using this lawsuit to obtain the easement rights. Dkt. No. 11 at 12. Plaintiff responds that equitable estoppel is not appropriate as the instruments for the Parcel B purchase and option agreement do not mention the easements, and it is only seeking to enforce its rights under Washington property law. Dkt. No. 33 at 5–6. Plaintiff is correct.

The defense of equitable estoppel requires the asserting party to show: (1) Plaintiff made "an admission, statement, or act inconsistent with the claim" later asserted, (2) Defendant took action "on the faith of such admission, statement, or act," and (3) an injury resulted from allowing the Plaintiff to "contradict or repudiate such admission, statement, or act." *Saunders v. Lloyd's of London*, 779 P.2d 249, 255 (Wash. 1989). Estoppel requires that Defendant's reliance is reasonable, and that reliance is unreasonable where both parties "have knowledge of the underlying facts" and "can determine the law." *Id.* Equitable estoppel is disfavored by courts, so the party must prove the defense by "clear, cogent, and convincing evidence." *Shelcon Constr. Grp., LLC v. Haymond*, 351 P.3d 895, 902 (Wash. Ct. App. 2015).

Attu cannot maintain the defense of equitable estoppel. Fatal to Attu's defense is his inability to point to clear and convincing evidence that Plaintiff made a statement that the easements would not belong to Parcel B until the option to purchase Parcel A was exercised. While the option agreement provided a pathway for the purchase of Parcel A, neither the instrument transferring Parcel B nor the option agreement itself addressed the easements. *See Saunders*, 779 P.2d at 255. At best, Attu points only to the lack of any mention of the easements in the documents, but the absence of evidence cannot meet the clear, cogent, and convincing standard required to prove equitable estoppel. Furthermore, Attu's reliance on this omission was not reasonable, as Attu could have determined that under Washington law, unless specified otherwise, appurtenant easements transfer with the purchase of land when the transfer instrument is silent. *See Kirk*, 831 P.2d at 796; *Saunders*, 779 P.2d at 255 (reliance is not reasonable "where both parties can determine the law").

Finding that Attu's defenses fail, the Court GRANTS Plaintiff's motion for summary judgment.

## V.    DISMISSAL OF OTHER CLAIMS

Having granted Plaintiff's motion for summary judgment, the Court will now address the other pending claims.

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate "only where there is no cognizable legal theory" or "[in]sufficient facts alleged to support a cognizable legal theory." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A trial court may dismiss a claim *sua sponte* for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987). A claim must include "more than labels and conclusions" and it is not sufficient where it provides only a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A. Attu's counterclaim

Attu has filed a counterclaim against Plaintiff for tortious interference with a contractual relationship. The claim is based on the theory that Attu retained Parcel B's easement rights and that Plaintiff is interfering with Attu's license agreement with Covington Land for the easement rights by bringing this lawsuit. Dkt. No. 11 at 18-19 As the Court has determined that the easements were appurtenant and Parcel B had easement rights from its creation, *see supra* at 11–13, there is no basis for Attu's counterclaim and the Court will dismiss it.

### B. Attu's crossclaim

Attu has filed a crossclaim against Defendant Covington Land for tortious interference with a business expectancy. Attu's crossclaim merely restates the elements of a claim for tortious interference with a business expectancy and does not provide factual allegations on alleged tortious actions taken by Covington Land. Dkt. No. 11 at 19; *see Leingang v. Pierce Cnty. Med. Bureau,*

*Inc.*, 930 P.2d 288, 300 (Wash. 1997) (stating the five elements of claim for tortious interference with business expectancy). Merely restating a cause of action without more is grounds for dismissal for failure to state a claim. *See Twombly,* 550 U.S. at 555 ("a formulaic recitation of the elements of a cause of action will not do"). Therefore, the Court will dismiss Attu's crossclaim.

### C. Covington Land's counterclaims

The Court will dismiss Covington Land's counterclaims against Plaintiff for quiet title and trespass. Covington Land claims that, to the extent that Parcel B's easements rights do not belong to Plaintiff, the easement rights should belong to Covington Land, rather than Attu. Dkt. No. 20 at 11. Covington Land also claims that if it has the easement rights, the Court should issue an injunction against Plaintiff for trespassing on the easements. *Id.* These claims are based on the theory that Plaintiff does not have easement rights associated with Parcel B. As the Court has determined that Plaintiff has such rights, *see supra* at 11–13, there is no basis for Covington Land's counterclaims and the Court will dismiss them.

### VI.    CONCLUSION

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Attu's motion to strike, Dkt. No. 27, is **DENIED**;

2. Covington 18's motion for summary judgment, Dkt. No. 15, is **GRANTED**;

3. Attu's counterclaim against Covington 18, Dkt. No. 11, is **DISMISSED**;

4. Attu's crossclaim against Covington Land, Dkt. No. 11, is **DISMISSED**;

5. Covington Land's counterclaims against Covington 18, Dkt. No. 20, are **DISMISSED**.

DATED this 1st day of August, 2019.

*Barbara J. Rothstein*
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE

