UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| COVINGTON 18 PARTNERS, LLC, | CASE NO. 2:19-CV-00253-BJR |
| *Plaintiff*, | |
| v. | ORDER DENYING DEFENDANT'S MOTION FOR RECONSIDERATION |
| ATTU, LLC; LAKESIDE INDUSTRIES, INC; UNITED STATES OF AMERICA; DEPARTMENT OF ENERGY; BONNEVILLE POWER ADMINISTRATION; COVINGTON LAND, LLC, | |
| *Defendants, Counter Claimants, Cross Claimants, Third Party Plaintiffs*, | |
| v. | |
| JOHN SINCLAIR; JANE DOE SINCLAIR, FIDELITY NATIONAL TITLE INSURANCE CO., | |
| *Third Party Defendants* | |

## I. INTRODUCTION

Before the Court is Defendant Attu, LLC's ("Attu") motion for reconsideration, Dkt. No. 51, of the Court's order granting Plaintiff Covington 18 Partners, LLC's ("Covington 18") motion for summary judgment and denying Attu's motion to strike, Dkt. No. 50. After reviewing the

motion, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will deny Attu's motion for reconsideration.

## II.　　BACKGROUND

The Court laid out the background of this case in depth in its recent order granting plaintiff's motion for summary judgment and denying defendant Attu's motion to strike ("Order"). Dkt. No. 50. In brief, between 1998 and 2001, Attu purchased two adjacent parcels of land in Covington, Washington. Dkt. No. 50 at 2. During its ownership of the property, Attu was granted four easements. *Id.* at 2–3. In 2009, Attu adjusted the boundary lines of its parcels, creating Parcel A and Parcel B. *Id.* at 2. Covington 18 purchased Parcel B from Attu in 2012 while Attu sold Parcel A to Defendant Covington Land, LLC ("Covington Land"). *Id* at 4.

The current dispute concerns whether the four easements passed from Attu to Covington 18 upon purchase of Parcel B. Covington 18 claims they did, and filed the current claim for quiet title to the easements. Attu believes they did not and opposed quiet title. Additionally, Attu filed a crossclaim against Covington Land for tortious interference with a business expectancy Covington Land. *Id.* at 6. In its crossclaim, Attu argues that Covington Land interfered with their business expectancy because Attu originally brokered an option agreement with Covington 18 to purchase the easements, but Covington Land and Covington 18 conspired to allow Covington 18 to access the easements without first exercising the option agreement. Dkt. No. 52 at 3.

On August 1, 2019, the Court held that the easements were appurtenant, passed to parcel B upon subdivision, and transferred to Plaintiff with the sale of Parcel B. Dkt. No. 50 at 11–14. The Court also *sua sponte* dismissed Attu's crossclaim against Covington Land because it rested on the premise that the easements did not pass. *Id.* at 22–3. Attu subsequently filed the motion for reconsideration before the Court alleging that (1) the Order's dismissal of Attu's crossclaim

2

against Covington Land was manifest error; (2) the Court ignored evidence that shows the easements are in gross; and (3) the Order misconstrues the facts in favor of Covington 18. The Court requested responses from Covington 18 and Covington Land, and both parties replied to the motion for reconsideration on October 11, Dkt. No. 55, and October 24, Dkt. No. 58, respectively.

### III. LEGAL STANDARDS

A district court may reconsider its order of summary judgment under Local Rule 7(h). *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993); Western District of Washington Local Rule 7(h)(1) (*hereinafter* "L.R. 7(h)(1)"). This District disfavors motions for reconsideration. L.R. 7(h)(1). This Court's standing order discourages such motions and will summarily deny motions for reconsideration that "reassert prior arguments or raise new arguments that could have been made earlier." Dkt. No. 37 at 5. Thus, unless the movant demonstrates (1) "manifest error in the prior ruling," or (2) "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence," this Court will deny such a motion. L.R. 7(h)(1); *see also Gras v. Subcontracting Concepts, LLC*, 2019 U.S. Dist. WL 5081198, at *2 (W.D. Wash., Oct. 10, 2019).

### IV. DISCUSSION

Attu advances three separate grounds for its motion for reconsideration. The Court will take each in turn.

*1. Whether the dismissal of the crossclaim was manifest error*

Attu argues it was manifest error for the Court to dismiss *sua sponte* its crossclaim against Covington Land. Dkt. No. 51 at 2. Attu bases this claim on two separate reasons: (1) the Court dismissed without giving Attu the opportunity to present evidence and (2) new evidence rebuts the Court's conclusion in its Order. Covington Land, in its response, argues that the dismissal of

3

Attu's crossclaim was appropriate because: their claim (1) did nothing more than recite the elements of the claim, as recognized by the Court, and (2) was also substantively justified because Attu cannot affirmatively satisfy the elements of tortious interference. Dkt. No. 58 at 2–4.

As it relates to the claim that Attu should have been granted a chance to provide additional evidence, "[a] trial court may dismiss a claim *sua sponte* under Fed. R. Civ. P. 12(b)(6)." *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) (citing *Wong v. Bell*, 642 F.2d 359, 361–62 (9th Cir. 1981)). Additionally, that dismissal may be made without giving notice to the claimant if the claimant "cannot possibly win relief." *Omar*, 813 F.2d at 991.

Attu's crossclaim that Covington Land tortiously interfered with its business expectancy was properly dismissed because Attu cannot possibly win relief. Attu's claim is predicated on the theory that the easements never passed from its ownership because they were in gross, but the Court expressly held they were appurtenant and passed to Covington 18. Dkt. No. 50 at 13–14. In order to prevail on a claim of tortious interference, Attu would have to show: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce County Medical Bureau*, 930 P.2d 288, 300 (Wash. 1997). But Covington Land could not have tortiously interfered with Attu's business expectancy because Covington 18 already owned the easements in question. Dkt. No. 50 at 15. Attu could not have had a business expectancy of selling the easements to Covington 18 according to the option agreement because the easements had already passed to Covington 18. *Id.* Therefore, there was no legitimate business expectancy for Covington Land to interfere with. As such, the

Court had no need to delay *sua sponte* dismissing Attu's crossclaim, and there was no manifest error in its prior decision.

   2. *Whether the Court improperly disregarded evidence and misread the law on easements*

Next, Attu argues that the Court's finding that the easements are appurtenant can be rebutted with new evidence. In support of its claim, Attu proffers evidence of agreements outside of the Purchase and Sale Agreement ("PSA"), the instrument Attu used to sell Parcel B to Covington 18. Dkt. No. 26 at 6. Covington 18 argues in opposition that the Court correctly applied the law of easements and correctly interpreted the PSA. Dkt. No. 55 at 2. Specifically, Covington 18 asserts that the PSA did not limit the transfer of the easements because they are appurtenant and, further, that the negotiations mentioned by Attu are inadmissible parol evidence. *Id.* The Court concludes that because Attu has merely reasserted an old argument and relied on old evidence, Attu has neither demonstrated that this Court committed manifest error nor presented new evidence which could support its motion.

First, Attu reiterates its original argument during summary judgment that: (1) the easements were in gross, (2) the easements could only transfer via affirmative conveyance, and (3) the negotiations between Attu and Plaintiff show that the easements could only transfer by exercising Covington 18's option for Parcel A. Dkt. No. 50 at 17; Dkt. No. 25 at 12–13. This argument, however, was rejected in the Order and is not lent new relevance simply through its reintroduction here. Moreover, the new evidence Attu purports to rely on is an affidavit already provided during the summary judgment phase. *See* Dkt. No. 26.

Further, and as before, the Court is barred from considering the evidence Attu relies on pursuant to the parol evidence rule. The parol evidence rule is applied to writings that are considered fully integrated and final. *Emrich v. Connell*, 105 Wn.2d 551, 556 (1986). A writing

is fully integrated when it includes an integration clause. *Golden Gate Acceptance Corp. v. General Motors Corp.*, 597 F.2d 676, 680 (9th Cir. 1979) (holding that the writing's integration clause, which barred any other "agreements or understandings . . . between the parties," fully integrated the agreement). The parol evidence rule disallows extrinsic evidence that would "add to, subtract from, vary, or contradict written instruments which are contractual in nature and which are valid, complete, [and] unambiguous . . ." *Emrich*, 105 Wn.2d at 555–56 (quoting *Buyken v. Ertner*, 33 Wn.2d 334, 341 (Wash. 1949)).

In this case, the PSA that facilitated the sale of Parcel B to Covington 18 did not discuss the four easements and included an integration clause, marking it as fully integrated. Dkt. No. 16-11 at 7–9 (the document is not modified by any other "verbal or other written agreements . . ."). The evidence of negotiations presented by Attu is contrary to the PSA, which does not mention easements. Dkt. No. 26-3 at 7. As stated in the Order, any restrictions on the transfer of appurtenant easements must be stated explicitly in the PSA. Dkt. No. 50 at 16. Yet as the Court's Order noted, "nothing in the sale document dictated" that the intention of the parties was to restrict the transfer of the easements. *Id.* Therefore, because the PSA was fully integrated and appurtenant easements impliedly transfer with the sale of land, the evidence of additional negotiations given by Attu was, and still is, inadmissible in interpreting the PSA. For these reasons, the Court did not improperly disregard the evidence, and Attu's motion for reconsideration on these grounds will be denied.

3. *Whether the order misconstrues facts in favor of Covington 18*

Finally, Attu argues that the Court "pervasively" construed the facts in favor of the moving party, Covington 18, in the Order. This Court did not construe the facts of the case in Plaintiff's favor as a matter of procedure but as a matter of substance. Viewing the facts in any light, even

6

the light most a favorable to Attu, does not change them. Because the easements are appurtenant, they passed with the sale of Parcel B to Plaintiff and with Parcel A to Covington Land. For these reasons, the Court denies Attu's claim that it "pervasively" misconstrued the facts in favor of Plaintiff.

## V. CONCLUSION

For the forgoing reasons, the Court hereby DENIES Attu's motion for reconsideration. Dkt. No. 51.

DATED this 14th day of November, 2019.

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE